IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. ) <br> DAVID THURMAN, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> TERRY McCANN, Warden, ) <br> Stateville Correctional Center, ) <br> ) <br> Respondent. ) | No. 04 C 3870 <br><br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Petitioner David Thurman has brought a pro se petition for habeas corpus relief[1] pursuant to the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, seeking to overturn his state conviction for first-degree murder, armed robbery, armed violence, and aggravated assault. For the reasons set forth below, the petition is denied.

## FACTS

On September 26, 1992, following a bench trial in the Circuit Court of Cook County, petitioner was convicted of first degree murder, armed robbery, armed violence, and two counts of aggravated assault. The Circuit Court judge gave petitioner concurrent sentences of: (1) natural life in prison for first-degree murder; (2) 30 years in prison for armed robbery and

---

[1] When Thurman filed his habeas petition, he was serving his sentence at Menard Correctional Center, in Menard, Illinois, where Eugene McAdory was Warden. Petitioner has since been transferred to Stateville Correctional Center, in Joliet, Illinois, where Terry McCann is Warden. Because Mr. McCann has custody of petitioner, the court substitutes him as the proper party respondent. Rule 2(a) of the Rules Governing § 2254 Cases in the United States District Courts; Fed. R. Civ. P. 25(d)(1); Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004).

armed violence; and (3) three years for the counts of aggravated assault. Petitioner filed a direct appeal, arguing that his sentence, based partially on a prior murder conviction, was improper. On February 2, 1994, the Illinois Appellate Court affirmed petitioner's convictions and sentences.[2]

On December 19, 1994, petitioner filed a petition for leave to appeal ("PLA") to the Illinois Supreme Court, alleging that his sentence, based partially on a prior murder conviction, was improper. On February 1, 1995, the Illinois Supreme Court denied petitioner's PLA.

On June 2, 1995, petitioner filed a pro se post-conviction petition pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1 et seq., alleging that: (1) his due process rights were violated because he was not proven guilty beyond a reasonable doubt and did not receive a fair trial; (2) he received ineffective assistance of counsel because: (a) his trial attorney failed to call a key witness and impeach another; (b) his trial attorney failed to challenge the sufficiency of evidence regarding the alleged robbery; and (c) his trial attorney failed to "follow up" on a government witness's inability to pick petitioner out of a line-up; and (3) his Sixth Amendment right was violated when his attorney was not called to be present for the line-up.

The trial court appointed counsel, who filed a supplemental petition for post-conviction relief on March 24, 2000. In that supplemental petition, petitioner claimed ineffective assistance of trial and appellate counsel for: (1) failure to move to suppress line-up identification information prior to trial; (2) failure to call a key witness; (3) failure to request that the court consider a finding of second degree murder; (4) failure to challenge petitioner's alleged statements to a police officer that led to the recovery of a handgun; and (5) failure to present

---

[2]The Illinois Appellate Court consolidated this appeal with another appeal by petitioner. The Illinois Appellate Court addressed only petitioner's other appeal, finding no reason to discuss the merits of the crime underlying the current petition.

2

compelling issues on appeal. Petitioner also claimed that the state failed to notify him that a trial witness received leniency in exchange for his testimony. On July 21, 2000, the trial court granted the State's motion to dismiss the supplemental post-conviction petition and denied his post-conviction petition.

Petitioner appealed the trial court's denial of his post-conviction petition to the Illinois Appellate Court. In his appeal, petitioner argued that he had been denied a fair trial because a government witness received leniency in exchange for his cooperation and the State failed to correct the witness's testimony to the contrary. He also argued that the State failed to reveal to defense counsel the agreement with the government witness, which could have been used for impeachment purposes, in violation of Brady v. Maryland, 373 U.S. 83 (1963). On March 13, 2003, the Illinois Appellate Court affirmed the dismissal of petitioner's post-conviction hearing. Petitioner then filed a petition for rehearing on April 7, 2003, which the Illinois Appellate Court denied on April 16, 2003.

On June 12, 2003, petitioner filed a PLA to the Illinois Supreme Court, in which he alleged that his due process rights were violated when the prosecutor failed to disclose at trial that a government witness received leniency in exchange for his testimony and failed to correct the witness's testimony to the contrary. The Illinois Supreme Court denied the PLA on October 7, 2003.

Having exhausted all available state court avenues for relief, petitioner timely filed the instant pro se petition for writ of habeas corpus, alleging that: (1) he was denied a fair trial because state witness Pascual Alvarez received leniency in exchange for his testimony and the prosecution failed to disclose that fact or correct Alvarez's testimony to the contrary; (2) he was denied due process because the prosecution withheld a witness's conflicting statement during

3

discovery; and (3) he received ineffective assistance of counsel because his attorney failed to: (a) file motions to suppress a witness identification and a lineup in which petitioner had initially refused to participate, and (b) object at trial the admission of certain evidence regarding a bullet and a check stub.

## DISCUSSION

Procedural Default

Before the court may entertain the merits of a habeas petition, it must first inquire whether petitioner has: (1) exhausted all available state remedies, and (2) raised all of his claims during the course of his state court proceedings. Kurzawa v. Jordan, 146 F.3d 435, 440 (7th Cir. 1998). If a petitioner fails to meet either of these requirements, the court may not reach the merits of his habeas claims. Id.

Respondent concedes that the petition is timely and that petitioner has exhausted his available state remedies, but argues that petitioner's claims for due process violations and ineffective assistance of counsel are procedurally defaulted. As the Supreme Court noted in O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999), "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" to preserve a claim for habeas review. See also Hadley v. Holmes, 341 F.3d 661, 664 (7th Cir. 2003) (failure to take claim through "complete round" of appellate process resulted in procedural default).

A federal court may excuse a procedural default if a petitioner can show either cause for the default and actual prejudice as a result of the alleged violation of federal law, or if petitioner

can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

*Due Process: Failure to Disclose Second Pre-Trial Statement of Witness*

Petitioner claims that the prosecution withheld from him the second pre-trial statement of witness Armando Alanis. Petitioner has not raised this claim in any state court proceeding. He claims that he did not raise such a claim because he was not aware of the existence of the second pre-trial statement until after his post-conviction petition was denied. According to petitioner, at that point, his attorney turned over his file to him to appeal that denial, and he found Alanis's second pre-trial statement in his file.

As respondent correctly points out, petitioner's claim simply does not make sense. If Alanis's second pre-trial statement was in the file held by petitioner's counsel, then the state clearly had turned over the statement to petitioner's counsel. The fact that petitioner was unaware of the statement does not mean that the prosecution improperly withheld it.[3]

Further, petitioner has not demonstrated that the prosecution's alleged failure to disclose the second post-trial statement is prejudicial to him. As discussed above, this court may still consider a claim otherwise procedurally barred if the court's failure to consider the claim would result in fundamental unfairness to petitioner or a miscarriage of justice. House v. Bell, --- U.S. ----, 126 S.Ct. 2064, 2067 (2006). To establish such prejudice, petitioner must show that he is actually innocent of the crime for which he was convicted. Id. at 2077. In other words, petitioner must show that in light of new evidence, no reasonable juror would have found him

---
[3] At best, petitioner could raise a claim for ineffective assistance of counsel for his attorney's failure to disclose to him the second pre-trial statement. However, as discussed below, the statement is not prejudicial to petitioner and would not have altered the outcome of his trial.

5

guilty absent the error alleged in the habeas petition. Schlup v. Delo, 513 U.S. 298, 316 (1995).

The court has evaluated Alanis's pre-trial statements and his testimony at trial. In the court's view, there are only two inconsistencies between the pre-trial statements and the trial testimony: (1) at trial, Alanis said he drove the car, and before trial, he said he was merely a passenger; and (2) at trial, Alanis said he saw petitioner going through the pockets of the victim, and before the trial, he said he saw petitioner standing over the victim's body.

The court simply cannot conclude that the verdict would have been different if the factfinder had known about these inconsistencies. The first inconsistency is irrelevant to petitioner's guilt, and the second "inconsistency" is, in fact, only an elaboration of the facts disclosed in the pre-trial statement. Further, Alanis previously identified petitioner in a line-up, and the prosecution presented several other eyewitnesses at trial to corroborate Alanis's identification of petitioner. Finally, petitioner's counsel had the opportunity to cross-examine Alanis at trial regarding the inconsistencies between his first pre-trial statement and his testimony on direct examination. For these reasons, petitioner cannot demonstrate any prejudice to him by the court's failure to hear this claim. Consequently, the court denies petitioner's due process claim as procedurally defaulted.

*Ineffective Assistance of Counsel*

Petitioner raised a claim of ineffective assistance of counsel in his post-conviction petition, but he failed to make the same claim in his post-conviction appeal to the Illinois Appellate Court or his PLA to the Illinois Supreme Court. As petitioner himself notes in his

reply brief, he failed to continue with this claim because "[i]t would have been futile to carry this to the Supreme Court." Petitioner may not simply "opt out of the state review process because he is tired of it or frustrated by the results he is getting." Cawley v. DeTella, 71 F.3d 691, 695 (7th Cir. 1995). Petitioner is required to include his claim in each stage of the appellate process; failure to do so constitutes a procedural default of that claim. Id.

Further, as discussed above, the prosecution presented an overwhelming amount of evidence against petitioner. Because petitioner has not shown that he is actually innocent of the crime, there is no miscarriage of justice, and therefore no prejudice to petitioner. For that reason, the court denies petitioner's claim for ineffective assistance of counsel as procedurally barred.

Merits

Under AEDPA, a petitioner is not entitled to a writ of habeas corpus unless the challenged state court decision was: (1) "contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings." McFowler v. Jaimet, 349 F.3d 436, 446 (7th Cir. 2003). A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the Court. Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

Whether the state court decision involved an unreasonable application of federal law is analyzed under an objective standard. Id. at 409. The standard is difficult to meet, because

"unreasonable" means "well outside the boundaries of permissible differences of opinion." McFowler, 349 F.3d at 447. This court "may not issue the writ [of habeas corpus] simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." Jackson v. Frank, 348 F.3d 658, 662 (7th Cir. 2003).

Petitioner alleges in his first claim that he was denied a fair trial when the prosecution failed to disclose that Alvarez, a state witness and cousin of the victim, received leniency in exchange for his testimony and failed to correct Alvarez's testimony to the contrary.[4] The court first notes that Alvarez's testimony appears to be correct. On August 20, 1992, Alvarez was sentenced to 160 hours of community service, six days in jail, which was time considered already served, and one year of conditional discharge. On August 27, 1992, the court modified the original sentencing order to drop the 160 hours of community service to reflect that Alvarez fulfilled that requirement by serving seven additional days in jail, which is considered a greater sentence than the 160 hours of community service.

Even assuming, however, that Alvarez did testify falsely, the appellate court applied state and federal law correctly. The appellate court noted that the prosecution's knowing use of perjured testimony to obtain a criminal conviction violates a defendant's right to due process of law. Giglio v. United States, 405 U.S. 150, 153 (1972); Napue v. Illinois, 360 U.S. 264, 269 (1959). The appellate court also noted, however, that "[a] conviction obtained by the knowing use of false testimony must be set aside if there is a reasonable likelihood that the false testimony

---

[4]As noted by respondent, petitioner also argues that the prosecution failed to notify defense counsel of Alvarez's prior criminal convictions during discovery. Petitioner made this argument only briefly in his post-conviction appeal brief. Because petitioner did not present this claim at all stages of the state review process, it is procedurally defaulted. See, e.g., O'Sullivan, 526 U.S. at 845.

could have affected the verdict." People v. Barrow, 195 Ill. 2d 506, 530 (2001).

The appellate court then analyzed the evidence before the trial court concerning defendant's guilt, which included: (1) a positive line-up identification of petitioner by Alvarez more than one year prior to committing the acts for which Alvarez pled guilty and received the sentence about which petitioner complains; (2) identification by another witness, both at a line-up and at trial; (3) corroborating testimony by a third witness; and (4) a fired bullet recovered from the crime scene, which was positively linked to a handgun to which petitioner directed the police in connection with another crime. Based on the evidence, the appellate court found that "even assuming that Alvarez received consideration in exchange for his testimony, and the State failed to disclose it, it is unreasonable to conclude that Alvarez's uncorrected testimony to the contrary affected the outcome of this case." Because the appellate court's holding is not contrary to or an unreasonable application of Supreme Court precedent, petitioner is not entitled to habeas relief on this claim.

## CONCLUSION

As discussed above, petitioner's claims for due process and ineffective assistance of counsel are procedurally defaulted, and petitioner's claim that he did not receive a fair trial is without merit. The petition for writ of habeas corpus is therefore denied.

**ENTER:** April 2, 2007

*Robert W. Gettleman*
_____

**Robert W. Gettleman**
**United States District Judge**